UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| GARY GAYLOR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | |
| | : | 2:12-CV-00082-RWS |
| GREENBRIAR OF DAHLONEGA | : | |
| SHOPPING CENTER, INC., | : | |
| | : | |
| Defendant. | : | |

## ORDER

This action is before the Court on Plaintiff's motion for summary judgment [25], Defendant's cross-motion for summary judgment [36], Plaintiff's motion to strike [39], and Plaintiff's motion to strike affidavit of Roberta Sims [50]. For the following reasons, the Court denies Plaintiff's motions to strike and grants in part and denies in part both motions for summary judgment.

Background

On April 9, 2012, Plaintiff Gary Gaylor filed this action against Defendant Greenbriar of Dahlonega Shopping Center, Inc., alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181

et seq.  Plaintiff alleged that he suffers from multiple sclerosis, which impairs his ability to walk and requires him to use a cane or a wheelchair.  Compl. [1] ¶¶ 4-5.  Plaintiff further alleged that Defendant is the owner and/or operator of a shopping center in Dahlonega, Georgia, which he has visited in the past and desires to visit in the future, but that he has experienced serious difficulty in accessing the goods and utilizing the services at the shopping center due to certain architectural barriers.  Id. ¶¶ 6, 10-12.

Specifically, plaintiff alleged that (1) parking was inaccessible due to excessive slopes, lack of proper access aisles, lack of proper signage, and an inadequate amount and/or improper distribution of parking spaces designated as accessible; (2) routes from the parking lot to the sidewalk were inaccessible due to curb cuts with excessive slopes and excessive side flares, as well as gaps in pavement, unprotected edges and large bumps in the concrete that did not provide a smooth transition; (3) routes throughout the property were inaccessible due to a lack of curb access points; and (4) payment/service counters at tenant spaces throughout the property were inaccessible due to excessive height.  Id. ¶ 14.  Plaintiff also alleged that Defendant either did not have a policy to assist people with disabilities or refused to enforce such a policy if it did exist.  Id. ¶ 15.

2

Plaintiff sought a declaration that the shopping center was in violation of the ADA and an order requiring Defendant (1) "to alter its facilities to make them accessible to and usable by people with disabilities to the full extent required by Title III of the ADA," and (2) "to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures." Id., Prayer for Relief.  Plaintiff also sought an award of reasonable attorney's fees and other expenses of litigation.  Id.

During the course of discovery, Plaintiff sought to compel Defendant to disclose information related to its financial condition on the grounds that such information was relevant to whether modification of the alleged architectural barriers was "readily achievable" within the meaning of the ADA.  See 42 U.S.C. § 12181(9).  The Court held that the information was discoverable but that Defendant would not be required to produce the requested information if it was willing to stipulate that the removal of architectural barriers as proposed by plaintiff was "financially readily achievable."  Order of Oct. 23, 2012 [19] at 2.  In response, Defendant stipulated "that the removal of barriers as proposed by Plaintiff is financially

3

readily achievable," but not "that all of the measures proposed by Plaintiff are reasonable or necessary." Stipulation [21] at 1.

On November 13, 2012, Plaintiff filed a motion for summary judgment [25]. On the same day, Defendant requested an extension of the discovery period, which was due to expire on November 15, 2012. During a telephone conference with the Court regarding the request, Defendant's counsel explained that Defendant sought additional time to complete planned modifications that he contended would bring the shopping center into compliance with the ADA. Tr. of Nov. 16, 2012, Tel. Conference [40] at 2-3. Counsel also sought additional time to conduct discovery based on information regarding Plaintiff's disability that he said had come to light just a few days earlier, on November 9, 2012, when he took Plaintiff's deposition. Specifically, counsel cited (1) Plaintiff's testimony that his home has a gravel driveway and lacks a wheelchair ramp; and (2) a video recording taken after the deposition, which he said showed Plaintiff getting out of his wheelchair, putting it in the back of his pickup truck, and walking around his truck unassisted without difficulty. Id. at 4.

In response, Plaintiff argued that Defendant had failed to comply with established Court deadlines and was not entitled to a stay or an extension of

4

the discovery period so that it could make modifications to the shopping center in an effort to moot Plaintiff's claims. Id. at 5-8. As for his disability, Plaintiff argued that the evidence cited by Defendant did not warrant further discovery because Plaintiff did not contend that his disability made it impossible for him to walk. Id.

The Court found that Defendant had not acted in a timely fashion so as to justify a stay or an extension of discovery and therefore denied Defendant's request. Id. at 10. However, the Court noted that "to the extent that matters are remedied, those are matters the Court can take into account." Id.

On December 4 and 7, 2012, respectively, Defendant filed its response in opposition to Plaintiff's motion for summary judgment [30][1] and a cross-motion for summary judgment [36]. In support of both filings, Defendant submitted the affidavits of Roberta G. Sims [36-8], Defendant's sole owner and only employee, and Diane Moore [36-9], an employee of the Holiday Inn Express in Dahlonega where Plaintiff's deposition was taken. Ms. Sims' affidavit attests to remedial actions taken by Defendant in an effort to comply

---

[1] Defendant also filed a motion for extension of time to file its response [29]. Because the response was timely filed, the Court denies the motion as moot.

5

with the ADA.  First Sims Aff. [36-8] ¶¶ 3-7.  Ms. Moore's affidavit attests to her observation and video recording of Plaintiff in the parking lot of the hotel following his deposition and includes as an exhibit the DVD recording that she made.  Moore Aff. [36-9] ¶¶ 3-4 & Ex. 1 [32].

On December 10, 2012, Plaintiff filed a motion to strike the Sims and Moore affidavits and the DVD recording [39].  Plaintiff argues that the submission of this evidence violated the Court's previous Order denying Defendant's request for an extension of the discovery period.  Plaintiff also argues that the Court should strike the Moore affidavit and the DVD recording because Defendant did not timely disclose this information, and that the Court should strike the Sims affidavit because Defendant's submission of evidence of remedial actions taken after the close of discovery violated Rule 26 and the Court's scheduling order.  In the alternative, Plaintiff seeks leave of Court to take limited discovery responding to Defendant's newly presented evidence.

On May 23, 2013, Defendant filed the Second Affidavit of Roberta G. Sims [49].  In her second affidavit, Ms. Sims reiterates certain remedial measures described in her first affidavit and attests to further remedial actions Defendant has taken in an effort to bring the shopping center into

compliance with the ADA. Second Sims Aff. [49] ¶¶ 4-8. Ms. Sims also states that the Dahlonega City Engineer has informed her that the shopping center is now in compliance with the ADA. Id. ¶ 9. On May 28, 2013, Plaintiff filed a motion to strike Ms. Sims' second affidavit [50]. Plaintiff argues that the Court should strike the affidavit because it is untimely and contains conclusory legal statements, impermissible expert opinions, inadmissible hearsay, and needlessly cumulative information. In the alternative, Plaintiff seeks leave to conduct a supplemental inspection of Defendant's property if the motion to strike is not granted.

Discussion

I.     Motions to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "[a]n affidavit is not a pleading subject to a motion to strike." Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg., Inc., No. 1:11-CV-3405-TWT, 2013 WL 489141, at *1 (N.D. Ga. Feb. 8, 2013); see also Southard v. State Farm Fire & Cas. Co., No. 4:11-CV-243, 2013 WL 209224, at *7 (S.D. Ga. Jan. 17, 2013) ("[A] motion to strike is not the proper procedural vehicle to challenge affidavits.").

7

"Rather than striking a document or a portion thereof, it is usually more appropriate to consider a party's objections to affidavits which are filed in support of a motion for summary judgment when ruling on the merits of a motion for summary judgment." Haynes v. Twin Cedars Youth & Family Servs., Inc., No. 5:10-CV-321 (CAR), 2012 WL 895699, at *5 (M.D. Ga. Mar. 15, 2012). "[A] court may strike *or* disregard the improper portions of an affidavit submitted in connection with a motion for summary judgment, and consider the remainder of the testimony or statement." Id. at *7 (citation omitted) (emphasis in original).

Accordingly, instead of considering whether to strike the contested affidavits, the Court will address Plaintiff's objections in the process of ruling on the parties' motions for summary judgment and will disregard any improper testimony or evidence. Therefore, the Court denies Plaintiff's motions to strike.

II.    Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court

8

held that this burden could be met if the movant demonstrates that there is "an absence of evidence to support the non-moving party's case." <u>Id.</u> at 325. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. <u>Id.</u> at 324.

In reviewing a motion for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. <u>WSB-TV v. Lee</u>, 842 F.2d 1266, 1270 (11th Cir. 1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

The Rule 56 standard is not affected by the filing of cross-motions for summary judgment: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure</u> § 2720 at 335-36 (3d ed. 1998). Cross-motions may, however, be probative of the absence

of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984).

### III.  Defendant's Motion for Summary Judgment

The Court addresses Defendant's motion for summary judgment first because it raises threshold issues of standing and mootness.[2]  Defendant argues that Plaintiff lacks standing because the evidence shows that he is not disabled, and that he is unlikely to patronize Defendant's shopping center in the future.  Defendant argues that Plaintiff's claims are moot because Defendant has corrected all of the alleged ADA violations at the shopping center.  For the following reasons, the Court concludes that Plaintiff has standing and that all but one of his claims are not moot.

---

[2] Plaintiff argues that the Court should deny Defendant's motion for summary judgment because Defendant failed to file a separate statement of undisputed material facts, as required by Local Rule 56.1B(1).  But Defendant did file such a statement [36-10], which Plaintiff apparently overlooked.  As a result, instead of responding to the facts set out in Defendant's separate statement, Plaintiff has filed a response to the facts set out in Defendant's brief [43-1].  Nevertheless, since the facts in Defendant's brief largely track the facts in Defendant's separate statement, the Court finds that Plaintiff has substantially complied with the requirement to file a response to each of Defendant's undisputed material facts.  LR 56.1B(2), NDGa.

AO 72A
(Rev.8/82)

A.      Standing

To establish standing, a plaintiff must demonstrate : (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the conduct and the injury complained of"; and (3) redressability of the injury by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  Moreover, a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm.  City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).  In the ADA context, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'  Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'" Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002).

1.      Plaintiff's Disability

Defendant argues that Plaintiff cannot demonstrate an actual or imminent injury because he is not disabled.  In support of this argument,

11

Defendant relies on the affidavit of Diane Moore and the video recording she made of Plaintiff in the hotel parking lot following his deposition.  According to Ms. Moore, Plaintiff "wheeled himself out to a truck in the parking lot . . . , got out of his wheelchair unassisted, squatted down to work on his wheelchair, picked it up with his hands and placed it in the back of his truck without difficulty, and then walked in a normal fashion, unassisted, from the passenger's side of the truck to the driver's side door where he got in unassisted and drove away." Moore Aff. [36-9] ¶ 4.[3]  The DVD attached to her affidavit depicts Plaintiff's actions as described in the affidavit.[4]

Plaintiff argues that the Court should exclude this evidence for two reasons.  First, Plaintiff contends that submission of this evidence violated the Court's Order of November 16, 2012, denying Defendant's motion for an

_____

[3] Roberta Sims' first affidavit includes an identical description.  First Sims Aff. [36-8] ¶ 8.  However, unlike Ms. Moore, there is no evidence that Ms. Sims personally observed Plaintiff's actions in the parking lot.  In fact, Defendant's counsel stated that Ms. Sims' deposition was being taken inside the hotel while Plaintiff was in the parking lot.  Tr. of Nov. 16, 2012, Tel. Conference [40] at 4.  Since this portion of Ms. Sims' affidavit is clearly not based on personal knowledge, the Court will disregard it.  See FED. R. CIV. P. 56(c)(4) (affidavits must be made on personal knowledge).

[4] Citing his deposition testimony that he suffers almost constant pain, and that his "legs hurt [him] the most," Plaintiff disputes that he performed these actions "without difficulty," or that he walked in a "normal fashion."  Pl.'s Resp. to Def.'s Statement of Undisputed Facts [43-1] at 5 (quoting Gaylor Dep. [35] at 39).  Otherwise, Plaintiff does not dispute Ms. Moore's description of his actions.  Id.

12

extension of the discovery period, and that the evidence should therefore be excluded pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii).  That rule provides in pertinent part that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may . . . prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  This rule, however, has no application here. The Court's November 16 Order did not require Defendant to provide or permit any discovery; it merely denied Defendant's request for an extension of the discovery period.  Nor did the November 16 Order place any restriction on obtaining affidavits or other evidence from third parties.  Therefore, Defendant's submission of Ms. Moore's affidavit and the attached recording did not violate the Court's November 16 Order.

Second, Plaintiff argues that this evidence should be excluded because Defendant failed to disclose Ms. Moore's identity and the existence of the recording in a timely manner.  The Court agrees.  Ms. Moore made the recording on the morning of November 9, 2012, six days before discovery closed on November 15, 2012.  Defendant claims that it did not ask Ms. Moore to make the recording, that it was made without Defendant's knowledge, and

AO 72A
(Rev.8/82)

that it was not presented to Defendant "until days later."[5]  Def.'s Resp. Br. in Opp'n to Pl.'s Mot. to Strike [44] at 4.  Nevertheless, Defendant clearly knew about the recording some time before the morning of November 16, 2012, when Defendant's counsel referred to it during the telephone conference with the Court.  Tr. of Nov. 16, 2012, Tel. Conference [40] at 4.

A party is required to disclose the names of persons "likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses."  FED. R. CIV. P. 26(a)(1)(A)(i).  In addition, a party must supplement its disclosures and responses to discovery requests "in a timely manner" if it learns that they are incomplete in some material respect and the additional information "has not otherwise been made known to the other parties during the discovery process or in writing."  FED. R. CIV. P. 26(e)(1)(A).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

---

[5] Defendant does not disclose exactly when it received the DVD, nor does Defendant offer any explanation as to why Ms. Moore, who has no apparent connection with or interest in this litigation, would take it upon herself to make a surreptitious recording of Plaintiff.

14

motion . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Pursuant to Rules 26(a) and (e), Defendant was required to notify Plaintiff "in a timely manner" of Ms. Moore's identity and the information in her possession on which it might rely.[6]  Defendant failed to do so.  Instead, Defendant did not identify Ms. Moore until December 4, 2012, when it filed her affidavit in support of its response to Plaintiff's motion for summary judgment.  This was at least two-and-a-half weeks after Defendant knew of Ms. Moore's identity and the evidence in her possession.  The burden is on Defendant to demonstrate that its failure to disclose Ms. Moore's identity in a timely manner was either substantially justified or harmless.  See Torres v. City of Los Angeles, 548 F.3d 1197, 1213 (9th Cir. 2008).  Defendant has failed to even address this issue.  Therefore, pursuant to Rule 37(c)(1), Defendant may not use Ms. Moore's affidavit or the attached recording in support of either its own motion for summary judgment or its opposition to Plaintiff's motion for summary judgment.

_____

[6] In addition to its obligation to disclose persons likely to have discoverable information, Defendant was also required to supplement its responses to Plaintiff's interrogatories, which asked for the identity of persons interviewed or consulted in connection with, or having knowledge of facts relating to, this litigation.  See Interrog. Nos. 2 & 5 of Pl.'s First Set of Interrogs. to Def. [25-6].

15

Even if the Court were to consider Ms. Moore's affidavit, the evidence is still sufficient to establish that Plaintiff is disabled within the meaning of the ADA.   Under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).  Major life activities include "walking," as well as the "operation of a major bodily function," including the "neurological" function. Id. § 12102(2)(A) & (B).  An individual is substantially limited "when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people."   28 C.F.R., pt. 36, App. C.   In determining whether an individual is substantially limited, relevant considerations include "the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function."   29 C.F.R. § 1630.2(j)(4)(ii).[7]   "An

_____

[7] This is part of the Equal Employment Opportunity Commission's (EEOC) definition of "substantially limits" under Title I of the ADA.   Although not controlling in this case, the EEOC's interpretation is due substantial weight.  See Price v. Nat'l Bd. of Med. Exam'rs, 966 F. Supp. 419, 425 n.2 (S.D. W.Va. 1997) ("Congress clearly intended for the term 'disability' (and, therefore, the phrase 'substantially limits') to have a uniform meaning throughout the ADA. Accordingly,
(continued...)

AO 72A
(Rev.8/82)

impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity to be considered substantially limiting." Id. § 1630.2(j)(1)(ii).

In this case, it is undisputed that Plaintiff suffers from multiple sclerosis, a condition that, "at a minimum, . . . substantially limits neurological function." Id. § 1630.2(j)(3)(iii). In his deposition, Plaintiff explained that as a result of his condition, he "live[s] in pain," mostly in his legs, which makes it difficult, although not impossible, for him to walk. Gaylor Dep. [35] at 39. Plaintiff acknowledged that he was able to stand and walk for brief periods next to his vehicle while assembling or disassembling his wheelchair. Id. at 34-35. Thus, Ms. Moore's evidence is entirely consistent with Plaintiff's own description of his physical limitations. Plaintiff does not contend that he is unable to walk, only that his ability to walk is substantially limited because of the pain caused by his multiple sclerosis. Nothing in Ms. Moore's testimony or in Plaintiff's actions as depicted in her recording contradicts Plaintiff's contention or establishes that Plaintiff is not substantially limited in his ability to walk. Defendant also

---

[7](...continued)
wherever possible, the Court must define the phrase 'substantially limits' in a manner consistent with each of the agencies' interpretations.").

contends that Plaintiff's deposition testimony that his home has a gravel driveway and lacks a wheelchair ramp shows that he is not disabled. Again, however, this evidence is entirely consistent with Plaintiff's own description of his physical limitations and does not show that his ability to walk is not substantially limited.

2.    Likelihood of Return

Defendant argues that Plaintiff cannot demonstrate an actual or imminent injury or that any injury will be redressed by a favorable decision because he has failed to show that he is likely to return to the shopping center. In determining whether a plaintiff's likelihood of returning to a particular establishment is sufficient to confer standing, courts have generally focused on four factors: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant." Norkunas v. Seahorse NB, LLC, 720 F. Supp. 2d 1313, 1316 (M.D. Fla. 2010), aff'd, 444 F. App'x 412 (11th Cir. 2011) (quoting Fox v. Morris Jupiter Assocs., No. 05-80689-CIV, 2007 WL 2819522, at *9 (S.D. Fla. Sept. 21, 2007)).

18

With regard to these factors, Plaintiff cites evidence that the shopping center is 14.2 miles from his home in Cleveland, Georgia, and states that he has visited the shopping center numerous times, with his first visit occurring on or about October 9, 2011, and his most recent visits on October 31 and November 8, 2012. Gaylor Aff. [25-2] ¶ 7. Plaintiff also states that he plans to return to the shopping center. Id. ¶ 8. In addition to normal, everyday shopping, Plaintiff states that he is working with a sales associate at the Sears store there to purchase a water heater for his home. Id. Independent of his intent to return to the shopping center as a patron, Plaintiff states that he also plans to return to the property as an ADA tester to determine whether the barriers to access identified in his complaint have been remedied. Id. ¶ 9. Finally, with regard to his frequency of travel near the shopping center, Plaintiff states that he routinely travels to Atlanta for medical treatment of his multiple sclerosis and passes by the shopping center often. Id. ¶ 6. In addition, Plaintiff states that he and his wife like to go to the summer festivals and events in downtown Dahlonega and often shop at the shopping center when they do so. Id.

In support of its contention that Plaintiff is unlikely to return to the shopping center, Defendant argues that it "is quite a distance to travel when

19

there are closer business establishments that could satisfy the Plaintiff's needs near his residence in White County." Def.'s Br. in Supp. of Mot. for Summ. J. [36-1] at 8-9. However, Defendant offers no evidence to support its contention that there are business establishments nearer Plaintiff's home that could satisfy his needs. In addition, Plaintiff points out that the only Sears store within fifteen miles of his home is at Defendant's property. Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. [43] at 11 n.8.

Defendant also cites Plaintiff's testimony that he can only recall visiting the shopping center about six times, and that one of those times was merely to buy a single pack of cigarettes and check on the property for purposes of this litigation. Defendant argues that "[a] visit to a defendant he has sued in a neighboring county for a single pack of cigarettes, and keeping the receipt to prove he did so, demonstrates action o[f] the plaintiff consistent with an attempt to manufacture standing." Def.'s Br. in Supp. of Mot. for Summ. J. [36-1] at 9. However, not only does this argument ignore Plaintiff's other visits to the shopping center as a patron, it is also contrary to well-established authority recognizing that visits to a property as a tester to determine whether it has been made ADA compliant can serve as a legitimate basis for establishing standing. See, e.g., Norkunas, 720 F. Supp. 2d at 1315

20

(noting that "[n]umerous courts in the Middle District of Florida have applied the Eleventh Circuit's rationale [recognizing tester standing under the Fair Housing Act] to confer tester standing under the ADA as well"); see also Harty v. Simon Prop. Grp., L.P., 428 F. App'x 69, 71 (2d Cir. 2011) (allegation that plaintiff "plans to return [to shopping mall] both as a patron . . . and as a tester 'to determine whether the property has been made ADA compliant'" was sufficient to establish standing).

Finally, Defendant argues that Plaintiff's litigation history undermines the credibility of his claim that he intends to return to the shopping center. Defendant cites evidence that within the past three years Plaintiff has filed some fifty-eight ADA lawsuits in Georgia, Florida, Tennessee, and Missouri. Defendant argues that "[b]ecause of his extensive litigation history, any of Plaintiff's professed statements that he will return to all of the properties he has sued are implausible." Def.'s Br. in Supp. of Mot. for Summ. J. at 7.

The Court "must be particularly cautious about [making] credibility determinations that rely on a plaintiff's past ADA litigation." D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th Cir. 2008). As the D'Lil court noted, "most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled . . . . For the

21

ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." Id. (quotation omitted). The evidence suggests that Plaintiff is such a committed individual. According to Plaintiff, he has "never received a dime from any lawsuit." Gaylor Dep. [35] at 23. Instead, he brings these actions "because I want any place that I'm hindered from using my wheelchair or it hurts because of unnecessary things in parking lots or inside stores that, you know, I can't have the same privilege to shop as another person." Id. at 70.

Even assuming that Plaintiff's history of bringing ADA suits is relevant, the Court finds nothing in that history that undermines Plaintiff's credibility. As evidenced by the complaints attached to Defendant's motion for summary judgment, Plaintiff's previous ADA lawsuits were all brought against shopping centers and other public accommodations in north Georgia and the Atlanta metro area; Chattanooga and Knoxville, Tennessee; and St. Louis, Missouri. See Def.'s Mot. for Summ. J., Ex. A [36-2 through 36-7].[8] According to the complaints, all of these locations are either in the general

---

[8] Plaintiff also filed two ADA suits against a former employer in Florida. Id. Since these suits did not involve access to public accommodations, they have no relevance to the current discussion.

22

vicinity of plaintiff's residence, or where he travels regularly to receive medical treatment (Atlanta), visit his son (St. Louis), or vacation with his wife (Chattanooga and Knoxville).  Id.  Therefore, contrary to Defendant's argument, it is not implausible that Plaintiff would return to all of these places of public accommodation in the future.

Defendant relies on several district court cases in which the plaintiff was found to lack standing based in part on his litigation history.  These cases, however, are all distinguishable.  See Harris v. Stonecrest Care Auto Ctr, LLC, 472 F. Supp. 2d 1208, 1211-14 (S.D. Cal. 2007) (finding plaintiff unlikely to return to gas station located 600 miles from his home that he had visited only once where there was no evidence that he was likely to be in the vicinity again in the future); Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1163-65 (C.D. Cal. 2005) (finding plaintiff unlikely to return to winery more than 100 miles from his home that he had visited only once more than a year prior to filing suit where he demonstrated lack of preference for its goods and services and had been previously declared a vexatious litigant); Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (finding plaintiff unlikely to return to a hotel located 280 miles from his home that he had visited only once "by chance" where he did not stay at the hotel on the

23

night in question and had not attempted to return to the hotel since that time, there were "countless" other hotels nearer his intended destination, and he did not make a reservation at the hotel until after he had filed his lawsuit).[9]

By contrast, the evidence in this case strongly supports the credibility of Plaintiff's stated intention to return to Defendant's shopping center. Plaintiff has demonstrated a history of visits to Dahlonega and specifically to Defendant's shopping center, together with the likelihood of his returning frequently to the area both to attend festivals and other events and while traveling to Atlanta for medical treatment. He has also described a definite plan to purchase goods from one of the stores at Defendant's shopping center. All of this evidence bolsters the credibility of Plaintiff's stated intention to return and establishes that Plaintiff has standing to bring this suit.

------------------------------

[9] Other cases cited by Defendant do not even address the issue of standing. See Doran v. Del Taco, Inc., 373 F. Supp. 2d 1028, 1033-34 (C.D. Cal. 2005), vacated and remanded, 237 F. App'x 148 (9th Cir. 2007) (holding pre-litigation warning and opportunity to cure prerequisite to recovering attorney's fees under ADA); Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860, 864-65 (C.D. Cal. 2004), aff'd, 500 F.3d 1047 (9th Cir. 2007) (declaring plaintiff a vexatious litigant after he filed approximately 400 ADA lawsuits making nearly identical allegations, including thirteen separate complaints for essentially identical injuries allegedly suffered over a five-day period).

B.     Mootness

In his motion for summary judgment, Plaintiff identified nine architectural barriers that allegedly violate the ADA: (1) an inadequate number of compliant parking spaces designated for the disabled; (2) the absence of compliant access aisles serving the parking spaces, (3) the absence of above-ground signage identifying the parking spaces, (4) the absence of van-accessible parking spaces, (5) the improper distribution of the parking spaces, (6) excessively sloped parking spaces and access aisles, (7) the absence of a marked accessible pathway between the parking spaces and the curb cuts serving the sidewalk to store entrances, and (8-9) non-compliant curb ramps at two locations.   Br. in Supp. of Pl.'s Mot. for Summ. J. [25-1] at 16-18. Defendant contends that it has voluntarily undertaken measures to remedy these alleged ADA violations, and that Plaintiff's claims are therefore moot.

In support of its argument, Defendant relies on the affidavit of Roberta Sims filed with its motion for summary judgment.  In that affidavit, Ms. Sims states that Defendant now has (1) seven handicapped-accessible parking spaces in its parking lot, (2) an adjacent space next to the handicapped van-accessible space to permit a wheelchair ramp to unload handicapped persons, and (3) seven standing above-ground handicapped parking signs.  First Sims

25

Aff. [36-8] ¶¶ 3-5. In addition, Ms. Sims states that Defendant (1) has redone the curb ramps so as to make them even smoother to transition from the parking lot to the covered sidewalk than they were before, and (2) is painting marks on the parking lot surface to designate additional handicap space for travel. Id. ¶¶ 6-7.

Approximately five-and-a-half months later, Defendant filed Ms. Sims' second affidavit [49]. In that affidavit, in addition to the remedial measures she previously described,[10] Ms. Sims states that Defendant has (1) added parking spaces that are van accessible with the proper signage indicating van accessibility, and (2) properly distributed the handicapped accessible parking spaces to allow the most accessible distance to each storefront in the shopping center. Second Sims Aff. [49] ¶¶ 4-5. Finally, Ms. Sims states that she has spoken with the Dahlonega City Engineer, and that he has informed her that the shopping center is now in compliance with the ADA. Id. ¶ 9.

Plaintiff argues that the Court should exclude both of Ms. Sims' affidavits because, by submitting evidence of remedial measures undertaken after the close of discovery, Defendant is attempting to circumvent discovery

---

[10] Portions of Ms. Sims' second affidavit merely restate, in nearly identical language, the remedial measures described in her first affidavit. See First Sims Aff. [36-8] ¶¶ 6-7; Second Sims Aff. [49] ¶¶ 6-7.

deadlines in violation of Rule 26, the Court's scheduling order, and the Court's Order of November 16, 2012, denying Defendant's request for an extension of the discovery period. The Court disagrees. Plaintiff cites no authority that a defendant is precluded from taking measures to remedy alleged ADA violations after the discovery period has ended, and the Court is aware of none. Nor is the Court aware of any reason why Defendant should be prevented from submitting evidence of such remedial measures in support of a motion for summary judgment.

Plaintiff also argues that the Court should exclude Ms. Sims' second affidavit because, among other things, it is untimely and includes inadmissible hearsay. The Court agrees. First, the affidavit was filed nearly six months after expiration of the deadline for Defendant to submit materials either in support of its motion for summary judgment or in opposition to Plaintiff's motion for summary judgment. See LR 7.1B & C, 56.1D, NDGa. The Local Rules prohibit the parties from filing supplemental briefs or materials in connection with motions for summary judgment except upon order of the Court. LR 56.1A, NDGa. Defendant did not seek leave of court to file Ms. Sims' second affidavit. Therefore, the Court will not consider it. In addition, Ms. Sims' assertion that the Dahlonega City Engineer informed

27

her that the shopping center is now in compliance with the ADA is inadmissible hearsay and will not be considered for that reason as well.

Finally, Plaintiff argues that if the Court considers Ms. Sims' first affidavit, it should also consider the supplemental report of Plaintiff's expert, Ryan W. McKee, regarding his site inspection of the shopping center conducted on December 8, 2012, after the affidavit was filed [41-2]. Defendant contends that the Court should not consider the supplemental report because Mr. McKee conducted the inspection after the expiration of discovery. The Court concludes that it is appropriate to consider Mr. McKee's supplemental report. First, Defendant raised no objection with the Court when Plaintiff's counsel notified it that he intended to have his expert re-inspect the property. Furthermore, after receiving Ms. Sims' affidavit claiming that at least some of the alleged ADA violations had been remedied, it was not improper for Plaintiff to have his expert re-inspect the property to assess the validity of that claim so that he could adequately respond to Defendant's motion for summary judgment. Finally, since the Court will consider Defendant's evidence that the alleged ADA violations were remedied after the close of discovery, it is only fair that the Court also consider Plaintiff's expert's post-discovery assessment of that evidence.

28

After considering both Ms. Sims' first affidavit and Mr. McKee's supplemental report, the Court finds that the only claim that has been rendered moot by Defendant's remediation efforts is Plaintiff's claim regarding the absence of above-ground mounted signage (Barrier 3). Ms. Sims states that the parking lot now has seven standing above-ground handicapped parking signs, and Mr. McKee confirms that this alleged ADA violation has been remedied. First Sims Aff. [36-8] ¶ 5; Supplemental Expert Report [41-2] at 3. Therefore, Plaintiff's claim based on this alleged violation is moot.

With regard to the other eight barriers alleged by Plaintiff, the evidence does not establish that they have been remedied. Specifically, with regard to the parking lot's alleged lack of the required seven parking spaces reserved for the disabled (Barrier 1), although Ms. Sims states that the parking lot now has seven handicapped-accessible parking spaces, Mr. McKee's supplemental report indicates that three of the seven spaces continue to have excessive slopes or cross-slopes and therefore are not ADA compliant. First Sims Aff. [36-8] ¶ 3; Supplemental Expert Report [41-2] at 3, 6. With regard to the alleged lack of access aisles serving the parking spaces reserved for the disabled (Barrier 2), although access aisles have been added, Mr. McKee

29

reports that three of the seven aisles have excessive slopes and/or cross-slopes and are therefore not ADA compliant.  Supplemental Expert Report [41-2] at 3, 6-7.  With regard to the alleged absence of a van-accessible parking space (Barrier 4),  although Defendant has added a van-accessible parking space, Mr. McKee reports that the space is not ADA compliant because the asphalt is broken, in disrepair, and contains impermissible changes in level.  Id. at 3, 6, 8.  With regard to two curb ramps allegedly having excessive slopes (Barriers 8 and 9), although Defendant installed two new curb ramps, Mr. McKee reports that neither is ADA compliant because one has excessive flare slopes while the other lacks a level landing.  Id. at 3, 6, 19-21.  Finally, with regard to the alleged improper distribution of the parking spaces reserved for the disabled (Barrier 5), the excessive slopes and/or cross-slopes in three of the parking spaces and access aisles (Barrier 6), and the absence of a striped path of travel between the parking spaces and the curb cuts (Barrier 7), there is no evidence that Defendant attempted to remedy these alleged violations.  Id. at 3, 4, 6, 9-18.  Therefore, Plaintiff's claims based on Barriers 1-2 and 4-9 are not moot.

30

IV.    Plaintiff's Motion for Summary Judgment

Having determined that Plaintiff has standing and that his claims based on eight of the nine alleged architectural barriers are not moot, the Court turns to Plaintiff's motion for summary judgment. Plaintiff seeks summary judgment both on his claims that the alleged architectural barriers violate the ADA and on his claim that Defendant has a discriminatory policy that violates the ADA. The Court first addresses the claims based on alleged architectural barriers and then the policy claim.

A.    Architectural Barriers

With regard to facilities that existed prior to January 26, 1992, Title III of the ADA requires the owner of a public accommodation "to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. §§ 36.304(a) & 36.508. With regard to alterations to existing facilities after January 26, 1992, and new construction completed after January 26, 1993, Title III requires an owner to make the facility "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a); 28 C.F.R. §§ 36.401(a) & 36.402(a). New construction need not be readily accessible if an owner can demonstrate that it is "structurally impracticable." 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.401(c). Alterations

31

must be readily accessible only "to the maximum extent feasible."  42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402(c).

In addition, new construction and alterations must comply with either the 1991 ADA Standards for Accessible Design ("1991 Standards"), 28 C.F.R. pt. 36, App. D; or the 2010 ADA Standards for Accessible Design ("2010 Standards"), which consist of the 2004 ADA Accessibility Guidelines ("ADAAG"), 36 C.F.R. pt. 1191, Apps. B & D, and the requirements contained in 28 C.F.R. §§ 36.401 through 36.406.  28 C.F.R. §§ 36.104 & 36.406(a).[11] Existing facilities are not required to comply with the Standards, but they serve as a guide in determining whether a condition in an existing facility constitutes a barrier that must be removed if removal is readily achievable. Gathright-Dietrich v. Atlanta Landmarks, Inc., 435 F. Supp. 2d 1217, 1226 (N.D. Ga. 2005), aff'd, 452 F.3d 1269 (11th Cir. 2006).  In making this determination, the court asks whether, under the circumstances of the particular case, the alleged barrier actually or effectively precludes a

---

[11] Whether compliance with the 1991 or the 2010 Standards is required depends on the date an owner completed its application for a building permit, or the date construction began if no permit was required.  If before September 15, 2010, compliance with the 1991 Standards is required.  Id. § 36.406(a)(1).  If between September 15, 2010, and March 15, 2012, compliance with either the 1991 Standards or the 2010 Standards is required.  Id. § 36.406(a)(2).  If on or after March 15, 2012, compliance with the 2010 Standards is required.  Id. § 36.406(a)(3).

handicapped individual from using an existing facility on terms sufficiently comparable to non-disabled individuals.  Id.

      1.     Barriers 1, 2, 4, and 6

Barriers 1, 2, 4 and 6 are all based on allegedly excessive slopes or cross-slopes or abrupt changes in level in parking spaces designated for the disabled and access aisles serving those spaces.  See Pl.'s Statement of Additional Facts [43-2] Nos. 64-69, 73-74.[12]  Plaintiff's expert measured the slopes and found that three of the non-van-accessible parking spaces, the newly added van-accessible parking space, and three of the access aisles all violated ADAAG § 502.4, which permits slopes no steeper than 1:48 (2.1%). Expert Report [25-10] at 7, 15-17; Supplemental Expert Report [41-2] at 3, 6-8, 13-16; see also 1991 Standards § 4.6.3 (slopes in parking spaces and access aisles may not exceed 1:50 or 2%).  Plaintiff's expert further found that these violations could be corrected in a readily achievable manner by re-paving the parking spaces and access aisles and the immediately adjacent areas to smooth the transition.  Expert Report [25-10] at 3, 15; Supplemental Expert Report [41-2] at 3, 6-8, 13.

_____

[12] Defendant filed no response to Plaintiff's Statement of Additional Facts. Therefore, they are deemed admitted.  LR 56.1B(3), NDGa.

The parties did not address whether the slopes in the parking lot relate to an existing facility, alterations, or new construction. The evidence shows that the grade of the parking lot has not been changed since the shopping center was built in 1981. Sims Dep. [38] at 59-60. The Court concludes that the slopes relate to an existing facility, and that compliance with the Standards is therefore not required. <u>Gathright-Dietrich</u>, 435 F. Supp. 2d at 1226. Nevertheless, using the Standards as a guide, the Court finds the evidence sufficient to establish that the slopes constitute barriers that must be removed if removal is readily achievable. Plaintiff's expert measured slopes of 2.9%, 3.5%, 4.6%, and 6.2% in the designated parking spaces and access aisles of Defendant's parking lot, while the Standards permit a maximum slope of no more than 2.1%. Supplemental Expert Report [41-2] at 13-16; ADAAG § 504.2; 1991 Standards § 4.6.3. These slopes are sufficiently in excess of the maximum permitted under the Standards to establish that they actually or effectively preclude disabled individuals from using the existing parking lot on terms sufficiently comparable to non-disabled individuals and therefore constitute barriers.

Defendant does not dispute the measurements made by Plaintiff's expert, or that the slopes exceed the maximum permitted under the

34

Standards.  Nor does Defendant contend that the recommended re-paving to correct these excessive slopes is not readily achievable.  Nevertheless, despite its professed desire to make the shopping center ADA compliant, Defendant has made no effort to remedy the excessive slopes in the designated parking spaces and access aisles.  Instead, Defendant contends that the recommended re-paving is unnecessary "due to the level nature of the parking lot and after voluntarily restriping parking spaces."  Def.'s Resps. to Pl.'s Statement of Undisputed Material Facts [31] No. 52.

The Court concludes that Plaintiff is entitled to summary judgment on these claims.  Defendant's re-striping of the parking spaces is irrelevant because that did nothing to address the excessive slopes. As for the parking lot being level, Defendant relies solely on the following description by Ms. Sims in her deposition: "It's not a slope, no more than where the water would barely run off of it, because there's no slope to it.  It's level.  It's flat as this tabletop." Sims Dep. [38] at 45.  Ms. Sims, however, acknowledged that she had not measured the slopes, and that she was basing her description simply on "[l]ooking at it with my natural eyes." Id. at 48.  In light of Plaintiff's expert's precise measurements, Ms. Sims' ballpark "guesstimate" is not sufficient to create a genuine dispute as to whether the slopes exceed the

35

maximum permitted under the Standards.  Since the evidence establishes that these excessive slopes constitute barriers to access by the disabled, and Defendant does not dispute that removal of these barriers is readily achievable, the ADA mandates that they be removed.

2.     Barrier 5

Barrier 5 concerns the alleged improper distribution of parking spaces designated for the disabled.  See Pl.'s Statement of Additional Facts [43-2] Nos. 70-72.  This barrier was not addressed by Defendant's renovations following the close of discovery.  Id.; First Sims Aff. [36-8].  Plaintiff's expert found that a row of shops on the northeast side of the property had no parking spaces designated for the disabled facing the storefronts, and that there was no accessible path to that side of the shopping center from the existing accessible parking spaces further across the parking lot.  Expert Report [25-10] at 3-4, 7, 12; Supplemental Expert Report [41-2] at 3-4, 6, 9. Plaintiff's expert found that this condition violated ADAAG § 208.3.1, which requires that where parking serves more than one accessible entrance, accessible parking spaces must be dispersed and located on the shortest accessible route to the accessible entrances.  Id.; see also 1991 Standards § 4.6.2 (imposing same requirement).  Plaintiff's expert further found that

36

this violation could be corrected in a readily achievable manner by modifying the existing parking facility so that the accessible spaces are evenly distributed and removing the unequal access to the stores on the northeast side. Expert Report [25-10] at 3, 12-14; Supplemental Expert Report [41-2] at 9-12.

The parties did not address whether this challenged condition relates to an existing facility, new construction, or alterations. At her deposition on November 9, 2012, Ms. Sims testified that the parking lot had been re-striped within the last two years. Sims Dep. [38] at 39. Since the distribution of parking spaces designated for the disabled relates solely to the marking of certain spaces to indicate that they are reserved for parking by disabled individuals, the Court concludes that the current distribution of designated parking spaces relates to an alteration that occurred after November 9, 2010. Therefore, the distribution of parking spaces designated for the disabled must comply with either the 1991 Standards or the 2010 Standards. 28 C.F.R. § 36.406(a)(2).

As noted above, both the 1991 Standards and the 2010 Standards establish the same requirement. Defendant does not dispute that there are no accessible parking spaces facing the northeast row of shops and no

accessible pathway to those shops from existing accessible parking spaces, or that this condition does not comply with the Standards.  Def.'s Resps. to Pl.'s Statement of Undisputed Material Facts [31] No. 32; Pl.'s Statement of Additional Facts [43-2] No. 71.  Nor does Defendant contend that it has complied with the Standards to the maximum extent feasible.  See 28 C.F.R. § 36.402(a) (alterations must be readily accessible to maximum extent feasible).  Therefore, Plaintiff is entitled to summary judgment on this claim.

### 3.    Barrier 7

Barrier 7 concerns the alleged absence of a striped pathway between parking spaces reserved for the disabled and the curb cuts serving the sidewalk to the store entrances.  See Pl.'s Statement of Additional Facts [43-2] Nos. 75-76.  This alleged barrier was not addressed by Defendant's renovations following the close of discovery.  Id.; First Sims Aff. [36-8].  Plaintiff's expert found that the pathway between accessible parking spaces and curb ramp access points was not marked even though the route crossed vehicular traffic lanes.  Expert Report [25-10] at 7, 18; Supplemental Expert Report [41-2] at  3, 6, 17-18.  Plaintiff's expert found that this condition violated an advisory note to ADAAG § 502.3, which states in pertinent part: "In parking facilities where the accessible route must cross vehicular traffic

lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids." Id.; ADAAG Advisory 502.3 Access Aisle, 36 C.F.R. pt. 1191, App. D.  Plaintiff's expert further found that this violation could be corrected in a readily achievable manner by striping the pathways from accessible parking spaces across vehicular traffic lanes to curb ramp access points.  Expert Report [25-10] at 3, 18; Supplemental Expert Report [41-2] at 17.

The Court concludes that Defendant, rather than Plaintiff, is entitled to summary judgment on this claim.  Since this condition, like the proper distribution of parking spaces, solely concerns the striping of the surface of the parking lot, it relates to an alteration that occurred some time after November 9, 2010.  Therefore, it must comply with either the 1991 Standards or the 2010 Standards.  28 C.F.R. § 36.406(a)(2).  Plaintiff has not cited any provision of the 1991 Standards regarding this issue.  Instead, Plaintiff relies solely on an alleged violation of an advisory note to ADAAG § 502.3, which is part of the 2010 Standards.  The applicable regulations, however, expressly state that such advisory notes "do not establish enforceable requirements." 28 C.F.R. § 36.406(b).  Since Plaintiff has not established that there is an

39

enforceable requirement to stripe access paths that cross vehicular traffic lanes, Defendant is entitled to summary judgment on this claim.

        4.    Barriers 8 and 9

Barriers 8 and 9 concern two allegedly non-compliant curb ramps. <u>See</u> Pl.'s Statement of Additional Facts [43-2] Nos. 77-81. Plaintiff's expert initially found that the two curb ramps had excessive slopes. Expert Report [25-11] at 19-20. Upon reinspection following Defendant's installation of two new curb ramps, Plaintiff's expert found that both ramps still failed to comply with ADA requirements. Supplemental Expert Report [41-2] at 3, 6, 19-21. Specifically, with regard to the new curb ramp at the furniture store, Plaintiff's expert found that it had excessive flare slopes and that the door swing from the store's entry door impeded upon the landing. <u>Id.</u> at 19-20. With regard to the new curb ramp at J&J Foods, Plaintiff's expert found that it lacked a level landing, with the slope increasing all the way to the door. <u>Id.</u> at 21. Plaintiff's expert found that these conditions violated ADAAG §§ 406.1, 406.3, and 406.4, which require that curb ramp flares not be steeper than 1:10, and that landings be provided at the tops of curb ramps. <u>Id.</u> Plaintiff's expert further found that these violations could be corrected in a readily achievable manner by demolishing the existing curb ramps, installing new

curb ramps compliant with the regulations, and moving the ramps' location to an area where the landing will not be impeded. Supplemental Expert Report [41-2] at 19, 21.

The evidence shows that the two new curb ramps were installed in October 2012. Sims Dep. [38] at 31. Therefore, they must comply with the 2010 Standards. 28 C.F.R. § 36.406(a)(3). Defendant does not dispute that the curb ramps do not comply with the 2010 Standards. Pl.'s Statement of Additional Facts [43-2] Nos. 77-81. Nor does Defendant contend that it has complied with the Standards to the maximum extent feasible. See 28 C.F.R. § 36.402(a) (alterations must be readily accessible to maximum extent feasible). Therefore, Plaintiff is entitled to summary judgment on these claims.

B.    Discriminatory Policy

Plaintiff contends that it is also entitled to summary judgment on its claim that Defendant has a discriminatory policy toward the disabled. The only allegation in the complaint relating to this claim states: "Defendant either does not have a policy to assist people with disabilities or refuses to enforce such a policy if it exists." Compl. ¶ 15. In its motion for summary judgment, Plaintiff relies on the following undisputed facts in support of this

41

claim: (1) Defendant has no official policy regarding how disabled patrons are treated; (2) Defendant has an unofficial policy of helping people who need it; (3) Defendant has not written down this unofficial policy or communicated it to the tenants of the property; (4) Defendant does not provide any training to its tenants or employees regarding the accommodation of disabled persons; (5) Defendant has placed no individual in charge of making sure its property complies with the ADA; and (6) Defendant presumed that an inspection by the City in 1981 – more than a decade before the ADA became law – ensured compliance with the ADA. Pl.'s Statement of Undisputed Material Facts [25-1] Nos. 60-63; Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts [31] Nos. 60-63.

The Court concludes that these facts do not establish a violation of the ADA, and that Defendant, rather than Plaintiff, is therefore entitled to summary judgment on this claim.[13] Plaintiff's reliance on broad statements by Congress and the courts regarding the nature of discrimination against the disabled and the goals of the ADA is misplaced. See Br. in Supp. of Pl.'s

---

[13] Defendant did not specifically address this claim in its motion for summary judgment. However, it moved for summary judgment "with regard to *all* of the Plaintiff's claims." Def.'s Mot. for Summ. J. [36] at 1 (emphasis added). Since the undisputed facts establish that Defendant, rather than Plaintiff, is entitled to judgment on this claim, entry of summary judgment for Defendant is appropriate.

Mot. for Summ. J. [25-1] at 15.  None of these statements indicates that it is violation of the ADA for the owner of a public accommodation not to have an official policy regarding the treatment of disabled persons, or to have an unofficial policy of helping people who need it, regardless of whether the policy is written down or communicated to anyone.  Nor does Plaintiff cite any provision of the ADA requiring an owner to put someone in charge of ADA compliance, or any authority that an owner's mistaken assumption that it is in compliance with the ADA is itself a violation of the law.

Finally, with regard to Defendant's failure to provide any training to its tenants or employees regarding the accommodation of disabled persons, Plaintiff cites no provision of the ADA requiring a defendant in a case involving architectural barriers to provide any such training.  Plaintiff relies on the Second Circuit's decision in Camarillo v. Carrolls Corp.,518 F.3d 153 (2d Cir. 2008).  That case, however, did not involve architectural barriers but an owner's alleged failure to take steps necessary to ensure against discrimination because of the absence of auxiliary aids and services.  See 42 U.S.C. § 12182(b)(2)(A)(iii).  The court held that an owner's failure to effectively train employees how to deal with disabled individuals could violate that provision of the ADA.  Camarillo, 518 F.3d at 157 (alleged failure by

43

owners of fast food restaurants, which did not provide large print menus, to train employees how to deal with legally blind plaintiff could violate requirement to ensure that disabled individuals not treated differently from others due to absence of auxiliary aids or services).

Plaintiff in this case has not alleged a violation of Title III's provision regarding auxiliary aids and services.  Instead, he alleges only the existence of architectural barriers.  Plaintiff cites no provision of the law regarding architectural barriers that imposes a duty on an owner to train others in how to deal with disabled individuals.  Instead, the provisions on which Plaintiff relies require an owner either to remove architectural barriers from existing facilities, or to make new construction and alterations readily accessible to and usable by disabled individuals, and nothing more.  <u>See</u> 42 U.S.C. §§ 12182(b)(2)(A)(iv) & 12183(a).  Therefore, Plaintiff's claim based on an alleged discriminatory policy must fail.

<u>Summary</u>

For the foregoing reasons, the Court DENIES AS MOOT Defendant's motion for extension of time to respond to Plaintiff's motion for summary judgment [29], DENIES Plaintiff's motion to strike [39], DENIES Plaintiff's motion to strike affidavit of Roberta Sims [50], GRANTS IN PART AND

DENIES IN PART Plaintiff's motion for summary judgment [25], and GRANTS IN PART AND DENIES IN PART Defendant's motion for summary judgment [36].   Specifically, the Court GRANTS Defendant summary judgment on Plaintiff's claims regarding (1) the absence of above-ground signage, (2) the absence of marked accessible pathways across vehicular traffic lanes, and (3) the existence of a discriminatory policy toward the disabled; and the Court GRANTS Plaintiff summary judgment on his claims regarding (1) excessively sloped parking spaces and access aisles, (2) the improper distribution of parking spaces, and (3) non-compliant curb ramps at two locations.   With regard to the claims on which Plaintiff is granted summary judgment, the Court DECLARES that the conditions at Defendant's shopping center violate Title III of the ADA and ORDERS Defendant to alter its facilities to bring them into compliance with the law as soon as practicable.   The Court DIRECTS the Clerk to enter final judgment accordingly.   The Court will address Plaintiff's entitlement to an award of attorney's fees in accordance with the procedures set out in Local Rule 54.2.

IT IS SO ORDERED, this  27th  day of September, 2013.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)