UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

GARY GAYLOR,                          :
                                      :
        Plaintiff,                    :
                                      :        CIVIL ACTION NO.
v.                                    :
                                      :        2:12-CV-00082-RWS
GREENBRIAR OF DAHLONEGA               :
SHOPPING CENTER, INC.,                :
                                      :
        Defendant.                    :

**ORDER**

This action is before the Court on Plaintiff's Motion for Reasonable

Attorneys' Fees and Related Expenses [56].  For the following reasons, the

Court grants the motion.

Background

On April 9, 2012, Plaintiff Gary Gaylor filed this action against

Defendant Greenbriar of Dahlonega Shopping Center, Inc., asserting claims

under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12181 et seq.  Plaintiff alleged that certain specified architectural barriers

made it difficult for disabled individuals like him to access the goods and

services at Defendant's shopping center, and that Defendant either did not

have a policy to assist people with disabilities or refused to enforce such a policy if it did exist.

On November 13, 2012, Plaintiff moved for summary judgment. On December 7, 2012, Defendant filed a cross-motion for summary judgment arguing that Plaintiff lacked standing and that Plaintiff's claims regarding architectural barriers were moot because Defendant had voluntarily undertaken measures to remedy the alleged violations.

On September 27, 2013, the Court issued an Order granting in part and denying in part both motions. The Court rejected Defendant's arguments that Plaintiff lacked standing and found that Defendant had voluntarily remedied only one of nine alleged architectural barriers.[1] With regard to the other eight alleged barriers, the Court found that Plaintiff was entitled to summary judgment as to seven, declared that these barriers violated the ADA, and ordered Defendant to correct the violations as soon as practicable.[2]

---

[1] The only barrier Defendant remedied was the absence of above-ground mounted signage identifying parking spaces designated for the disabled.

[2] Plaintiff was granted summary judgment as to the following seven architectural barriers:  (1) inadequate number of compliant parking spaces designated for disabled, (2) absence of compliant access aisles serving parking spaces, (3) absence of van-accessible parking spaces, (4) improper distribution of parking spaces, (5) excessively sloped parking spaces and access aisles, and (6-7)
(continued...)

AO 72A
(Rev.8/82)

The Court found that Defendant was entitled to summary judgment as to the eighth alleged barrier[3] and on Plaintiff's policy claim.  Finally, the Court stated that it would address Plaintiff's entitlement to an award of attorneys' fees in accordance with the procedures set out in Local Rule 54.2.

On October 11, 2013, in accordance with Local Rule 54.2A(2), Plaintiff filed a preliminary motion for attorneys' fees and related expenses pursuant to 42 U.S.C. § 12205 and the equitable powers of the Court.  On October 15, 2013, Defendant filed a motion for an evidentiary hearing.  In the alternative, Defendant asked the Court to allow it to submit affidavits in opposition to the amount of fees and expenses Plaintiff was claiming.  On November 14, 2013, the Court denied Defendant's motion for an evidentiary hearing and stated that it would hear Plaintiff's motion on affidavits and briefs without an oral hearing.

On November 8, 2013, Plaintiff filed and served a brief in support of his motion, including a detailed specification and itemization of the requested

---

[2](...continued)
non-compliant curb ramps at two locations.

[3] Defendant was granted summary judgment as to the absence of a marked accessible pathway between the parking spaces and the curb cuts serving the sidewalk to store entrances because, although recommended, the pertinent regulations did not make this an enforceable requirement.

3

award with appropriate affidavits and other supporting documentation.  On December 13, 2013, Defendant filed its response in opposition to Plaintiff's motion with opposing affidavits.  On December 19, 2013, Plaintiff filed his reply together with an updated itemization of counsel's time records reflecting work done through that date.  Plaintiff seeks $131,275.50 in attorneys' fees and $7,033.30 in expenses.  After careful review of all the parties' submissions, the Court enters the following order.

Discussion

I.      Prevailing Party

        The ADA authorizes the Court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  In this case, Plaintiff obtained summary judgment in his favor on nearly all of his claims.  As a result, Defendant was ordered to eliminate architectural barriers at its shopping center that interfered with Plaintiff's ability to access the goods and services there.  Thus, Plaintiff obtained actual

4

relief on the merits of his claims that materially altered the legal relationship between the parties by modifying Defendant's behavior in a way that directly benefitted Plaintiff as well as other disabled individuals. Accordingly, the Court finds that Plaintiff is the prevailing party in this case and is entitled to an award of reasonable attorneys' fees and litigation expenses.

II.    Degree of Success

The starting point for calculating reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorneys' services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The product of these two numbers is commonly referred to as the "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 563 (1986). After calculating the lodestar, the court may adjust the amount upwards or downwards based on a number of factors, including the degree of the plaintiff's success in the suit. *Hensley*, 461 U.S. at 435-36; *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

Where a plaintiff has prevailed on some but not all of his claims for relief, the court should consider whether the claims are (1) "distinctly different claims for legal relief that are based on different facts and legal

theories," *Hensley*, 461 U.S. at 434; or, rather (2) claims that "involve a common core of facts" or claims which are based on related legal theories. *Id.* at 435.  If they are distinctly different claims, then the plaintiff may not receive a fee award for services on the unsuccessful claims. *Id.*  If, however, the case involved a common core of facts or the claims are based on related legal theories, then the court "should focus on the significance of overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.*

In this case, Plaintiff's claims regarding architectural barriers formed the heart of his case and were all based on a common core of facts and the same legal theory.  Plaintiff achieved success on seven of nine of these claims. Plaintiff was unsuccessful on his claim regarding above-ground signage because Defendant mooted the claim by installing the required signs. Plaintiff was unsuccessful on his claim regarding marked pathways between parking spaces and curb cuts because, although the regulations recommended such pathways, they did not make this an enforceable requirement.  Overall, Plaintiff achieved excellent results on these claims.  He obtained summary judgment declaring the other barriers to be in violation of the ADA and an

order requiring Defendant (1) to increase the number of compliant parking spaces for the disabled, (2) provide compliant access aisles serving those parking spaces, (3) provide van-accessible parking spaces, (4) properly distribute the parking spaces, (5) eliminate excessive slopes in parking spaces and access aisles, and (6) provide compliant curb ramps at two locations. Accordingly, the Court finds that Plaintiff is entitled to recover a fully compensatory fee for attorney services on his claims regarding architectural barriers.

Plaintiff's policy claim, on the other hand, was based on different facts and a different legal theory. Plaintiff was unsuccessful on this claim. Accordingly, the Court finds that the time expended on this claim should be excluded from the lodestar calculation. The policy claim was a relatively minor part of this case to which Plaintiff devoted little time. The Court agrees with Plaintiff's suggestion regarding the appropriate reduction in hours needed to eliminate the time spent on this claim. Accordingly, Mr. Casey's time will be reduced by 6.3 hours, representing 2.6 hours spent on research and 3.7 hours spent drafting the portions of the summary judgment brief and reply brief devoted to this claim. *See* Pl.'s Br. in Support of Mot. for Att'ys' Fees & Related Expenses [61] at 20 n.6.

7

Defendant contends that it was successful on one-third of the merits of the case, and that the lodestar should be adjusted downward accordingly. *See* Def.'s Resp. in Opp'n to Pl.'s Mot. for Reasonable Att'ys' Fees and Related Expenses [67] at 17-18.  The Court finds no support for this calculation.  As discussed above, Plaintiff achieved excellent results on nearly all of the claims that formed the heart of his case.  Therefore, the Court rejects Defendant's request for a one-third downward adjustment in the lodestar.

III.    Calculation of the Lodestar

        A.    Reasonable Hours Expended

In determining a reasonable number of hours, the Court must exclude hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434. "Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work." *Webster GreenThumb Co. v. Fulton Cnty.*, 112 F. Supp. 2d 1339, 1350 (N.D. Ga. 2000)(citations omitted).  "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  If counsel fails to do so, the Court must do it for them. *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

8

Plaintiff claims that four attorneys – John Moore, Brian Ku, Louis Mussman, and Ryan Casey – and two paralegals spent a total of 504.7 hours working on this case. Ku Decl. [70] ¶ 9. The lion's share of this time was spent by Mr. Ku and Mr. Casey, who devoted 233 and 219.6 hours to the case, respectively. *Id.* The number of hours claimed is supported by a detailed itemization prepared from contemporaneous time records regularly prepared and maintained by Plaintiff's counsel, which indicates the amount of time spent by each attorney and paralegal on each particular task and assigns each task to a specific category of work. Ku Decl. [70] ¶ 3 & Ex. 7 [70-1].[4]

Plaintiff's counsel assert that there has been "no unnecessary duplication of services" for which they now seek compensation, that they "worked hard to coordinate efforts early in the case and clearly delineated project assignments at every stage to prevent the duplication of work that might have resulted from multiple attorneys working on the case," and that tasks were "delegated appropriately among attorneys and paralegals according to their complexity." Joint Decl. of Pl.'s Counsel [62] ¶¶ 72 & 74.

---

[4] This updated itemization includes all time through the filing of Plaintiff's reply brief and excludes future estimates that were included in Plaintiff's initial itemization. *Id.* Accordingly, Defendant's objections to such future estimates are moot.

In further support of the reasonableness of the hours expended, Plaintiff has submitted the declarations of three attorneys: Louis R. Cohan, Lawrence A. Fuller, and C. Andrew Head.

Mr. Cohan is an Atlanta attorney with more than 20 years of experience in a number of litigation areas, including extensive experience litigating cases under federal statutes that provide for the award of attorneys' fees to the prevailing party. Cohan Decl. [63] ¶ 6. After reviewing the relevant pleadings, orders, and docket sheet in this case, as well as Plaintiff's counsel's Joint Declaration and itemized time entries, it is Mr. Cohan's opinion that "the number of hours expended in this case were reasonable and necessary (especially in light of Defendant's conduct), and that there was no duplication of effort warranting a reduction of fees." *Id.* ¶ 29. Mr. Cohan found "no unnecessary duplication of services," that "assignments were clearly and distinctly divided between Mr. Ku and Mr. Casey," that "[a]ny overlap . . . was minimal" and justified, and that tasks were "delegated appropriately among attorneys and paralegals according to their complexity." *Id.* ¶¶ 22-25. With regard to Defendant's conduct, Mr. Cohan notes that "this case was heavily litigated and that discovery was quite contentious," that "Plaintiff tried time and time again to settle the case," but "Defendant refused

10

to negotiate" and "instead chose to employ a scorched-earth tactic whereby it sought to attack the character of the Plaintiff while simultaneously rushing modifications to the property (in an attempt to moot the Plaintiff)." *Id.* ¶¶ 19, 21, 27-28.  As a result, in Mr. Cohan's opinion, "[i]nsofar as the number of hours in this case were unnecessary, that is clearly the fault of Defendant, not Plaintiff." *Id.* ¶ 28.

Mr. Fuller is a Miami attorney with over 35 years of experience who has litigated hundreds of actions under Title III of the ADA, including over twenty such cases in the Northern District of Georgia over a span of nine years.  Fuller Decl. [64] ¶ 8.  After reviewing Plaintiff's counsel's itemized time records and Joint Declaration, it is Mr. Fuller's opinion that the case "involved significant litigation," that "[t]he attorney time relegated to each task was appropriate," and that "the total hours expended in this case were reasonable." *Id.* ¶¶ 13-18.

Mr. Head is an Atlanta attorney with over 18 years of experience primarily in the area of employment law, which typically involves federal fee-shifting statutes.  Head Decl. [65] ¶ 6.  After reviewing relevant pleadings, orders, and the docket sheet, it is Mr. Head's opinion that Defendant's rejection of "numerous early attempts to resolve the case," and its effort

11

instead "to 'moot' Plaintiff's claims by unsuccessfully attempting to remediate those barriers that were the basis of Plaintiff's early settlement offers," drove "up the cost of litigation, increasing the amount of attorney's fees necessarily incurred by plaintiff's counsel." *Id.* ¶ 16.

Defendant contends that the time expended by Plaintiff's counsel on this case far exceeds what would be reasonable. In support of its argument, Defendant relies on the declaration of Christopher E. Parker, as well as the declaration of its own attorney, G. Lee Welborn. Mr. Parker is an Atlanta attorney with 25 years of experience focused primarily on litigation, alternative dispute resolution, and civil rights issues. Parker Decl. [68] ¶ 2. After reviewing relevant documents relating to this case, it is Mr. Parker's opinion that Plaintiff's counsel spent an excessive amount of time (1) conducting research, (2) consulting with the client, (3) preparing for and taking depositions, (4) preparing motions and responses, and (5) preparing the fee request. *Id.* ¶¶ 23-36. Mr. Parker also believes that time attributed to "communications between counsel" is not properly identified as to the timekeepers involved and the necessity of the stated activities and should therefore be excluded. *Id.* ¶ 37. Mr. Welborn asserts many of the same claims in his declaration. Welborn Decl. [68] ¶¶ 19-32, 35, 38-39, 49.

12

After careful review, the Court finds that the time spent by Plaintiff's counsel on this case was reasonable and is fully compensable with only two minor exceptions.[5]  The Court notes that the number of hours expended by Plaintiff's counsel was largely due to Defendant's own litigious conduct.  The record shows that Plaintiff attempted repeatedly to settle this case before significant litigation occurred.  Joint Decl. of Pl.'s Counsel [62] ¶¶ 16-18, 21-23, 25-31 & Ex. 1 [62-1] at 1-48.  Although Defendant expressed a willingness to correct the alleged architectural barriers, it balked at Plaintiff's demand for payment of $6,700 in attorneys' fees.  *Id.*, Ex. 1 [62-1] at 18.  Plaintiff offered to settle the remainder of the case and either negotiate the attorneys' fees or have the Court resolve the issue.  *Id.* at 17-18.  Plaintiff also provided Defendant an itemization of his attorneys' fees and continued to offer to settle for the original demand even after those fees had increased significantly.  *Id.*

---

[5] As noted above, time spent on Plaintiff's policy claim will be excluded.  In addition, Defendant objects to 16.2 hours of time spent by Mr. Casey traveling to and from Dahlonega to defend Plaintiff's deposition and take Defendant's deposition on the ground that local counsel could have performed these tasks instead without incurring significant travel time.  Parker Decl. [68] ¶ 30.  The Court believes it was reasonable for lead counsel, with whom Plaintiff was familiar, rather than local counsel, to handle these important tasks.  However, the Court also believes that travel time should be compensated at only one-half of an attorney's normal hourly rate.  Therefore, Mr. Casey's travel time will be compensated, but only at one-half of his approved hourly rate.

13

at 17.  Defendant did not respond to these proposals.  Instead, Defendant chose to pursue a no-holds-barred litigation strategy.

First, Defendant refused to produce relevant financial information, requiring Plaintiff to file a motion to compel, which the Court granted.  *See* Order of Oct. 23, 2012 [19].  Then, after Plaintiff had already filed a motion for summary judgment and in an effort to gain time to moot Plaintiff's claims, Defendant sought a last-minute extension of discovery to which Plaintiff was required to respond.  *See* Tr. of Telephone Conference held Nov. 16, 2012 [40]. After the Court denied the motion, Defendant filed a cross-motion for summary judgment.  In that motion, Defendant relied on a surreptitiously recorded video to argue that Plaintiff was not really disabled.  Defendant also sought to impugn Plaintiff's credibility because he had filed a large number of ADA lawsuits.  Finally, Defendant argued that it had corrected all of the ADA violations at its shopping center.  The Court later found that these arguments were almost entirely without merit.[6]  Nevertheless, Plaintiff was required to respond to them.

---

[6] The Court found that Defendant had corrected only one of nine alleged architectural barriers.  It rejected all of Defendants' other arguments.  Order of Sept. 27, 2013 [54], at 10-30.

Defendant's refusal even to attempt to negotiate a reasonable settlement and choosing instead to assert a number of meritless defenses to which Plaintiff was then required to respond are factors the Court may properly take into account in assessing the reasonableness of the hours expended by Plaintiff's counsel.  Defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)).

Defendant's argument that the number of hours is excessive is based principally on the fact that Plaintiff's counsel have filed a large number of ADA suits.  Defendant contends that this experience warrants a massive reduction in the number of hours in this case.  Specifically, according to Mr. Parker, time spent by Plaintiff's counsel conducting research should be reduced by 85%, time consulting with the client by 79%, time preparing for and conducting discovery by 75%, and time preparing and responding to motions by 71%.  Parker Decl. [68] ¶¶ 23-35.  The Court finds this argument without merit for the following reasons.

15

First, as Plaintiff's counsel point out, the large majority of cases they handle settle early and do not involve significant litigation.  Ku Decl. [70] ¶¶ 5-6.  Thus, counsel's prior experience in ADA cases does not support a finding that the amount of time they spent in this case on tasks that they are not generally called upon to perform was unnecessary or unreasonable.  Second, Mr. Parker's proposed reductions in the hours claimed are essentially arbitrary and based solely on his subjective assessment of the amount of time the tasks should have required.  But, as Plaintiff notes, Mr. Parker has no experience prosecuting ADA cases and has only defended a few such cases, none of which, unlike this case, was seriously litigated.  Pl.'s Reply in Support of Mot. for Att'ys' Fees and Related Expenses [69] at 7-8.  Mr. Fuller, on the other hand, who has litigated hundreds of cases under Title III of the ADA and is far more qualified to testify on this subject, attests that the number of hours expended on this litigation was reasonable.  Fuller Decl. [64] ¶¶13-18.  The Court finds Mr. Fuller's opinion more persuasive.

In addition, many of Defendant's specific objections to the time expended by Plaintiff's counsel are unfounded.  For example, Mr. Parker contends that researching *Daubert* issues was unnecessary because no *Daubert* motion was ever filed.  Parker Decl. [68] ¶ 23.  However, it was not

16

unreasonable for Plaintiff's counsel to anticipate a potential *Daubert* challenge by Defendant and to conduct research (totaling just 4.3 hours) so that their expert's inspection and report could be structured accordingly. Mr. Parker also argues that all the time spent by Plaintiff's counsel on two motions to strike should be excluded because the Court denied the motions. *Id.* ¶ 33. However, although the Court denied the motions on procedural grounds, it sustained objections raised in those motions to the affidavit of Diane Moore and the second affidavit of Roberta Sims, which Defendant had submitted in support of its motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. As a result, the Court excluded from evidence Ms. Moore's affidavit and the attached video recording of plaintiff, as well as Ms. Sims' second affidavit. Therefore, the time expended by Plaintiff's counsel on these motions was not unnecessary or unreasonable, but the Court finds that it was excessive and will reduce the hours as follows: Mr. Ku - 15.6 hours.

Other objections raised by Defendant are not supported by the record. For example, contrary to Mr. Parker's claim that time entries reflecting communications between counsel do not identify the timekeepers involved or the need for the communication, Parker Decl. [68] ¶ 37, the detailed

17

itemization submitted by Plaintiff's counsel clearly indicates who was party to each such communication and the subject of the communication.  *See* Category D, Joint Decl. of Pl.'s Counsel, Ex. 3 [62-3]; Ku Decl., Ex. 7 [70-1]. Similarly, Mr. Parker claims that Mr. Ku and Mr. Casey engaged in duplicative research on the concept of "mootness" as it pertained to discovery deadlines and the use of fee affidavits.  Parker Decl. [68] ¶ 24.  However, a review of the actual time entries in the categories cited reveals no duplication of effort.  *See* Categories J10 & J11, Joint Decl. of Pl.'s Counsel [62] ¶ 76 & Ex. 3 [62-3]; Ku Decl., Ex. 7 [70-1].  Likewise, Mr. Welborn contends that time spent by Plaintiff's counsel researching default procedures was unnecessary because Defendant filed a timely answer.  Welborn Decl. [68] ¶ 19.  The record, however, shows that Defendant was served on April 24, 2012, and did not file its answer until June 15, 2012, a full month after it was due.  *See* Return of Service [4] & Answer [5].  It was not unreasonable for Plaintiff's counsel to begin researching default procedures after Defendant went into default and before it filed an untimely answer.

Defendant also repeatedly mischaracterizes the nature of the work performed by Plaintiff's counsel.  For example, Defendant claims that "Plaintiff's attorneys have demanded that the Court order Defendant to

reimburse them for billing 4 hours at $245 an hour so as to provide the Court with a comparison between the prices in Washington, D.C. and Atlanta for chunk light tuna, facial tissues, tire balancing, Lipitor, boy jeans, washer repair and beer."  Def.'s Resp. in Opp'n to Pl.'s Mot. for Reasonable Att'ys' Fees & Related Expenses [67] at 4-5; Welborn Decl. [68] ¶ 18.  In support of this claim, Defendant cites a single page from one of the exhibits to Mr. Cohan's declaration, which is part of a cost-of-living comparison between Washington, D.C., and Atlanta that Mr. Cohan uses to adjust the hourly rates contained in the *Laffey* matrix.[7]  *Id.*; Cohan Decl. [63] ¶ 15 & Ex. B [63-2] at 2.  A review of the relevant time entries reveals that the four hours billed by Mr. Casey were spent corresponding and speaking on the telephone with Mr. Cohan and assisting with drafting and editing the Cohan declaration, which addressed the amount of time expended in the litigation as well as appropriate hourly rates, including a scientific analysis of hourly rates based on the *Laffey* matrix and cost-of-living statistics.  Joint Decl. of Pl.'s Counsel, Ex. 3 [62-3]; Ku Decl., Ex. 7 [70-1]; Cohan Decl. [63] ¶¶ 8-29.

---

[7] As Mr. Cohan explains, the *Laffey* matrix, approved in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), sets hourly rates for attorneys engaged in civil work in the Washington, D.C., metropolitan area based on years of experience.  Cohan Decl. [63] ¶ 13.

19

This amount of time spent on a lengthy and detailed declaration was clearly reasonable.

In another mischaracterization, Defendant contends that Plaintiff's counsel are seeking to recover for 105.6 hours of time "to write their summary judgment motion and reply brief."  Def.'s Resp. in Opp'n to Pl.'s Mot. for Reasonable Att'ys' Fees & Related Expenses [67] at 9; Welborn Decl. [68] ¶ 39.  In fact, Plaintiff's counsel claim 90.2 hours for this work.  Joint Decl. of Pl.'s Counsel [62] ¶ 76.  Most of this time (53 hours) was spent by Mr. Casey drafting the brief and tables, identifying and locating factual information for exhibits, and drafting the reply brief.  *Id.*  Mr. Ku spent 19.8 hours drafting the motion, statement of facts, motion for excess pages, affidavit, and proposed order, as well as revising and editing the brief; and Mr. Moore spent 1.4 hours reviewing the initial brief and the reply.  *Id.*  An additional 16 hours (3.1 by Mr. Ku and 12.9 by Mr. Casey) were spent on legal research and an internal memoranda.  *Id.*  The Court finds this additional time is not justified and will exclude it from the award.  The other 31.4 hours cited by Defendant were spent responding to Defendant's motion for summary judgment, which raised a number of distinct issues regarding standing and mootness.  *Id.*  The lion's share of this time (28.5 hours) was

20

spent by Mr. Casey pulling and reading the cases cited by Defendant, outlining and drafting the opposition brief and tables, drafting a response to Defendant's statement of facts, and locating and preparing exhibits. *Id.* Mr. Ku spent 2.2 hours editing and revising the opposition brief and Mr. Moore spent 0.7 hour reviewing the brief before filing. *Id.* When the actual time entries are thus properly analyzed, it is clear that the amount time spent by Plaintiff's counsel on these tasks was reasonable, with the exception of the 16 hours that the Court will exclude.

Finally, Defendant also contends that Plaintiff's counsel spent an excessive amount of time on the fee petition itself, and that the voluminous exhibits attached to the petition were excessive and unnecessary to substantiate the fee request. Parker Decl. [68] ¶ 36. Plaintiff's final itemized time records show a total of 18.1 hours of attorney time spent on research and 42.3 hours spent drafting the fee petition, plus 5.6 hours of paralegal time spent preparing exhibits. Ku Decl., Ex. 7 [70-1], Categories C9 & J11.[8] The Court does not find this expenditure of time on a substantial fee petition to be unreasonable. Nor were the exhibits submitted in support of the fee

---

[8] This does not include time in these categories spent researching and preparing the bill of costs or the reply brief.

petition excessive or unnecessary. Given Defendant's litigiousness and the likelihood of an appeal of any fee award, Plaintiff's counsel were fully justified in preparing a detailed factual summary of the case to support the fee request. It was also entirely appropriate for counsel to prepare a detailed itemization summarizing their time records and categorizing each task performed. Indeed, such a "summary, grouping the time entries by the nature of the activity or stage of the case" is essential to "[a] well-prepared fee petition." *Barnes*, 168 F.3d at 427 (quoting *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). For the most part, the Court finds the time expended on this task is appropriate, but makes the following reductions based on excessive time: Mr. Ku - 17.1, Mr. Casey - 5.5.

In sum, after carefully reviewing Plaintiff's motion and supporting documentation and considering all of Defendant's objections, the Court finds that the hours claimed in Plaintiff's final itemized time records were reasonably expended in the prosecution of this case and are fully compensable, with the exception of 6.3 hours of Mr. Casey's time spent on Plaintiff's policy claim, which shall be excluded; 16.2 hours of Mr. Casey's time spent traveling to and from Dahlonega for Plaintiff's and Defendant's depositions, which shall be compensated at one-half of his approved hourly

rate; 15.6 hours of Mr. Ku's time spent on the motions to strike which shall be excluded; 3.1 hours of Mr. Ku's time and 12.9 hours of Mr. Casey's time spent on the motion for summary judgment which shall be excluded; and 17.1 hours of Mr. Ku's time and 5.5 hours of Mr. Casey's time spent on the fee application which shall be excluded.

## B.  Reasonable Hourly Rates

The next step in the lodestar calculation is the determination of "a reasonable hourly rate" for the attorneys' services. *Hensley*, 461 U.S. at 433. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299).  The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000).  A fee applicant may also provide opinion evidence of reasonable rates, which is usually done by submitting affidavits of other attorneys in the relevant legal community. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396-97 (11th Cir. 1996).  Finally, the Court may use its own

AO 72A
(Rev.8/82)

personal experience and expertise to assess the lawyering skills exhibited in the case. *Id.* at 1397.

Plaintiff's counsel have requested reimbursement at the rate of $300 per hour for Mr. Moore, Mr. Mussman, and Mr. Ku; $245 per hour for Mr. Casey; and $95 per hour for paralegals Tara Rose and Reyna Sarmiento. Mr. Ku and Mr. Mussman are founding partners of Ku & Mussman in Miami, Florida, and are both in their twelfth year of practice. Mr. Casey is a partner in his eighth year of practice. Mr. Moore is the founding partner of The Moore Law Group in Atlanta and has over thirteen years of litigation experience in the Northern District of Georgia. According to Plaintiff's counsel, Mr. Moore's customary 2013 billing rate is $300 per hour while the rates sought by the Ku & Mussman attorneys are actually less than the firm's customary billing rates. Joint Decl. of Pl.'s Counsel [62] ¶¶ 98-99. Mr. Moore, Mr. Cohan, Mr. Fuller, and Mr. Head each attest that the rates requested are reasonable and customary in this district and division for similarly experienced attorneys in similar matters. *Id.* ¶ 101; Cohan Decl. [63] ¶¶ 8-12, 17; Fuller Decl. [64] ¶¶ 10-12; Head Decl. [65] ¶¶ 8-15. In addition, Mr. Cohan attests that the rates sought are reasonable given the ranges provided by a cost-of-living adjusted *Laffey* matrix for similarly

experienced attorneys.  Cohan Decl. [63] ¶¶ 13-16.  Mr. Head also cites the *Fulton County Daily Report*'s 2013 "Going Rate" survey for employment and employment litigation attorneys and paralegals, which indicates that since 2011 partners in the Atlanta area have charged between $335 and $730 per hour, associates between $235 and $470 per hour, and paralegals between $100 and $250 per hour.  Head Decl. [65] ¶¶ 9-10 & Exs. 1 & 2 [65-1, 65-2].

Defendant does not dispute that the hourly rates requested for Mr. Moore and the two paralegals are reasonable.  However, Defendant contends that the rates requested for Mr. Mussman, Mr. Ku, and Mr. Casey are excessive and should be reduced.  In support of this contention, Defendant relies on the declaration of Mr. Parker.  Using Mr. Moore's $300 hourly rate as a benchmark, Mr. Parker contends that a reasonable rate for Mr. Mussman and Mr. Ku, who each have two years less experience than Mr. Moore, would be no more than $275.  Parker Decl. [68] ¶¶ 14, 18-20. Similarly, Mr. Parker contends that a reasonable rate for Mr. Casey, who has six years less experience than Mr. Moore, would be no more than $200.  *Id.* ¶ 21.  Mr. Parker does not believe that either the cost-of-living adjusted *Laffey* matrix or the *Fulton County Daily Report*'s "Going Rate" survey is a reliable basis for determining reasonable hourly rates.  *Id.* ¶¶ 16-17.  He

25

notes that the adjusted *Laffey* matrix suggests that attorneys in Marietta charge more, and attorneys in Dalton only slightly less, than attorneys in Atlanta, which is contrary to his experience. *Id.* ¶ 16. He also argues that the cost-of-living adjustment fails to account for overhead and market factors that have a major impact on rates charged for legal services. *Id.* As for the "Going Rate" survey, Mr. Parker points out that it relies primarily on fee petitions submitted in bankruptcy matters, is dominated by lawyers from large firms who typically enjoy a higher rate structure than the market average, and does not indicate whether the rates sought were actually awarded or whether the services provided were similar to the services provided in this case. *Id.* ¶ 17.

Based on the evidence submitted and the Court's own personal experience and expertise, the Court finds that the hourly rates requested are reasonable. In addition to the declarations of Mr. Cohan, Mr. Fuller, and Mr. Head, Plaintiff cites several cases from this district awarding comparable rates. *See Disabled Patriots of Am., Inc. v. Regency Centers, L.P.*, No. 1:04-CV-0419-RWS, 2005 U.S. Dist. LEXIS 44851 (N.D. Ga. Feb. 3, 2005) (in Title III ADA case in 2005, awarding $300/hour for attorneys with 26 and 30 years' experience and $250/hour for attorney with 12 years' experience); *Disabled*

*Patriots of Am., Inc. v. HT West End, LLC*, No. 1:04-CV-3216-JEC, 2007 WL 789014, at *2-*3 (N.D. Ga. Mar. 14, 2007) (in Title III ADA case in 2007, awarding $250/hour to attorneys with 25 years' experience and $200/hour to attorney with 15 years' experience where "attorneys' work . . . was limited to drafting a complaint, preparing routine discovery requests, and drafting a settlement agreement"); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *9 (N.D. Ga. May 4, 2011) (report and recommendation) (approving $325/hour for attorney with 19 years' experience and $205/hour for attorney with only two years' experience); *Moore ex rel. Moore v. Cook*, No. 1:07-CV-631-TWT, 2012 WL 5362892, at *4 (N.D. Ga. Oct. 31, 2012) (awarding $475/hour for attorney with 23 years' experience, $400/hour for attorney with 26 years' experience, and $330/hour for attorney with 10 years' experience).  Plaintiff also cites cases from other jurisdictions granting fee requests by Plaintiff's counsel based on rates comparable to or higher than the rates they are requesting in this case.  *See Smith v. Intuit*, No. 5:12-cv-00222-EJD, slip op. at 2 (N.D. Cal. Oct. 1, 2013) (unpublished) (approving fee request calculated using 2013 hourly rate of

27

$500 for Mr. Ku and $400 for Mr. Casey);[9] *Martinez v. Public Storage*, No. 09-21488-CIV, 2010 WL 2219712, at *5 (S.D. Fla. Apr. 27, 2010) (report and recommendation) (approving hourly rate of $300 for Mr. Ku and Mr. Mussman and $250 for Mr. Casey).  Defendant does not cite any contrary authority.

The Court recognizes that the *Laffey* matrix and the "Going Rate" survey are imperfect tools for determining reasonable hourly rates. Nevertheless, the fact that the rates requested by Plaintiff's counsel in this case fall within the range for similarly experienced attorneys in the cost-of-living adjusted *Laffey* matrix and at the lower end of the range for similarly experienced attorneys included in the 2013 "Going Rate" survey serves to corroborate the opinions of Mr. Cohan, Mr. Fuller, and Mr. Head that the requested rates are reasonable.  The Court is not persuaded by Mr. Parker's opinion that the rates for Mr. Ku, Mr. Mussman, and Mr. Casey should be reduced based solely on the fact that they have somewhat less experience than Mr. Moore.

IV.    Litigation Expenses

---

[9] The court used these rates in calculating a lodestar multiplier for comparison to a fee award based on a percentage of a common fund.

Plaintiff's counsel claim that they incurred a total of $7,033.30 in litigation expenses and costs in connection with the prosecution of this action. Joint Decl. of Pl.'s Counsel [62] ¶ 102. On October 24, 2013, Plaintiff filed a Bill of Costs seeking taxation of $2,331.57 in costs pursuant to Fed. R. Civ. P. 54(d)(1) and LR 54.1. Bill of Costs [59]. On November 4, 2013, costs in the amount requested were taxed by the Clerk and included in the judgment. Taxation of Costs [60]. Defendant did not file a timely motion asking the Court to review the Clerk's action. *See* Fed. R. Civ. P. 54(d)(1) ("On motion served within the next 7 days, the court may review the clerk's action."). However, in its response to Plaintiff's Motion for Reasonable Attorneys' Fees and Related Expenses, Defendant objects to two items of these taxable costs: (1) $433.25 in printing fees, and (2) $743 in court reporter fees. Def.'s Resp. in Opp'n to Pl.'s Mot. for Reasonable Att'ys' Fees and Related Expenses [67] at 5-6; Welborn Decl. [68] ¶¶ 47-48. Due to Defendant's failure to file a timely motion seeking review of the Clerk's taxation of these cost items, the Court declines to consider these objections. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007) ("[I]t is fully within the discretion of the district court to decline to review an untimely objection to costs.") (citation omitted).

29

Defendant also objects to travel expenses incurred by Mr. Casey in connection with his attendance at Plaintiff's and Defendant's depositions in Dahlonega on the ground that local counsel should have handled these depositions. These expenses included airfare ($265.60), hotel ($97.33), rental car ($156.64), meals ($77.12), parking ($46.95), and internet service ($20.50), totaling $664.14. Joint Decl. of Pl.'s Counsel, Ex. 4 at 1 & Attach. K [62-4]. The Court has already found that Mr. Casey's attending these depositions instead of local counsel was reasonable. The foregoing expenses incurred by Mr. Casey to travel from Denver, Colorado, to Dahlonega, Georgia, for the depositions and then return are not unreasonable. Therefore, the Court overrules Defendant's objection to these expenses.

No other objections having been raised by Defendant, the Court finds that Plaintiff is entitled to recover the full amount of litigation expenses claimed ($7,033.30), less the costs already taxed by the Clerk ($2,331.57), for a total award of $4,701.73.

IV.    Conclusion

Based on the foregoing analysis, the Court concludes that Plaintiff is entitled to an award of attorneys' fees and related expenses as follows:

| Professional | Hours | Rate | Total |
| --- | --- | --- | --- |

| | | | | | | |
|---|---|---|---|---|---|---|
| Moore | 6.1 | x | $300 | = | $1,830.00 |
| Ku | 197.2 | x | $300 | = | $59,160.00 |
| Mussman | 6.7 | x | $300 | = | $2,010.00 |
| Casey | 178,7 | x | $245 | = | $43,781.50 |
| Casey (Travel) | 16.2 | x | $122.50 | = | $1,984.50 |
| Sarmiento | 16.5 | x | $95 | = | $1,567.50 |
| Rose | 22.8 | x | $95 | = | $2,166.00 |
| | | | | | $112,499.50 |
| Expenses | | | | | $4,701.73 |
| | | | | | |
| TOTAL | | | | | $117,201.23 |

Summary

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Reasonable Attorneys' Fees and Related Expenses [56] and AWARDS Plaintiff attorneys' fees in the amount of $112,499.50 and expenses in the amount of $4,701.73, for a total award of $117,201.23.

IT IS SO ORDERED, this  27th  day of May, 2014.


RICHARD W. STORY
United States District Judge

AO 72A
(Rev.8/82)